**BURSOR & FISHER, P.A.**
Brittany S. Scott (State Bar No. 327132)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: bscott@bursor.com

**BURSOR & FISHER, P.A.**
Max S. Roberts (*Pro Hac Vice Forthcoming*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: mroberts@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORINA

|  |  |
|---|---|
| JOSE URIBE, PATRICK DUNN, and JUDITH VERGIEN, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CLIF BAR & COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.      This is a class action suit brought on behalf of purchasers of Defendant Clif Bar & Company's ("Defendant") product, Clif Blok Energy Chews in flavors containing caffeine (the "Product" or the "Bloks"), in the United States.

2.      Defendant manufactures, distributes, and sells eleven flavors of the Product, three of which contain caffeine: Black Cherry, Tropical Punch, and Orange.  Each individual packet of the Bloks contains six cubes of product.

3.      On the front of the Product's packaging, Defendant represents that the Bloks contain "+[25 or 50] milligrams CAFFEINE," depending on the flavor.[1]







4.      Reasonable consumers such as Plaintiffs would understand this representation to mean that *each* cube of the Product contains 25mg or 50mg of caffeine.

---

[1] Defendant represents the Black Cherry flavor contains 50 milligrams of caffeine, and the Tropical Punch and Orange flavors both contain 25 milligrams of caffeine.

5.      Defendant fortifies this perception because nowhere in the Product's nutrition information and ingredients on the Product's packaging does Defendant state the amount of caffeine per cube:



6.      Similarly, the Product's nutrition information and ingredients on Defendant's website does not state the amount of caffeine per cube:

**Ingredients and Nutrition**                                                                      ⌄

**Ingredients**

TAPIOCA SYRUP*, CANE SUGAR*, MALTODEXTRIN*, PECTIN, CITRIC ACID, GREEN TEA EXTRACT (CONTAINS CAFFEINE), NATURAL FLAVOR, POTASSIUM CITRATE, JUICE CONCENTRATES FOR COLOR (CARROT, BLUEBERRY, AND BLACK CURRANT), SEA SALT, SUNFLOWER OIL*, CARNAUBA WAX*.

*Organic Ingredient

Nutrition and ingredient facts shown here may differ from what you find in stores. Please refer to the actual packaging for current information for this product.

7.      Indeed, although Defendant represents on its website that the Bloks contain 100 calories per serving and 50mg of sodium per serving, Defendant does not make the same claim as to the caffeine content:

*Per serving

**Not recommended for pregnant or nursing women, children under 18 years old, or people sensitive to caffeine.

8.      Thus, reasonable consumers who purchase the Product are led to believe that each individual cube within a packet of the Product contains 25-50 milligrams of caffeine.

9.      The amount of caffeine in the Product is material to consumers who purchase Defendant's Bloks.  The Bloks are marketed as products that aid in physical performance of endurance sports and activities, and "[c]affeine is widely accepted as an endurance-performance enhancing supplement."[2]  Indeed, it is a "common strategy to improve endurance performance [through] the use of caffeine as an ergogenic aid; up to 90% of recreational and professional endurance athletes use caffeine supplements to improve their performance."[3]  And Defendant partners with the Ironman series of triathlons—which it represents prominently on some flavors of the Bloks—and 89% of participants[] who competed in the 2005 Ironman World Championships[] planned to use caffeine prior to or during the race."  *Id*[4]

10.     Thus, the caffeine content of the Bloks is material to consumers who purchase the Bloks.

11.     Unfortunately for consumers, Defendant's representations about the amount of caffeine in its Bloks are false and misleading.  In reality, the Bloks contains 25-50 milligrams of

---

[2] Andreas Kreutzer, Austin J. Graybeal, Kamiah Moss, Robyn Braun-Trocchio and Meena Shah, *Caffeine Supplementation Strategies Among Endurance Athletes*, 4 FRONT. SPORTS ACT. LIVING 821750, 1 (Apr. 2022).

[3] *Id.* at 2

[4] *Id.*

caffeine *per three* cubes.  Thus, consumers are effectively getting only one-third (1/3) of the advertised amount of caffeine per package of the Product.

12.     Defendant could easily correct this misleading advertising by including the language "[25mg or 50mg] *per serving*" on the front of the Product's packaging.  Instead, Defendant has tried to hide this information from consumers.  Buried *underneath a flap* on the bottom of the Product's packaging, Defendant purportedly includes a small print disclaimer in small font stating "3 CLIF BLOKS contain [25mg or 50mg] of caffeine":







13.     Not only are reasonable consumers unlikely to find this disclaimer because it is buried under a plastic flap on the bottom of the Product, no reasonable consumer would expect small print language buried on the bottom panel of the Product's packaging to contain language inconsistent with the front-facing representation that the Product contains 25mg or 50mg of caffeine per cube.

14.    Similarly, in the FAQ section of the product page of Defendant's website, Defendant states the caffeine content of the Bloks is 25mg or 50mg per serving:

—    **Do any flavors of CLIF BLOKS contain caffeine? Why?**

Yes, three flavors of CLIF BLOKS contain caffeine. Caffeine is an effective performance-enhancing ingredient that is known to give athletes a boost and can help enhance mental alertness. We use green tea extract as our source of caffeine and have a special label on the packages of those flavors so you can easily tell that they contain added caffeine. Black Cherry Flavor CLIF BLOKS contains 50mg of caffeine per serving. The Orange Flavor and Tropical Punch Flavor contains 25mg of caffeine per serving. Caffeinated flavors of CLIF BLOKS are not intended for individuals under 18 years of age, pregnant or nursing women, or for those sensitive to caffeine.

15.    The disclaimer is not highlighted anywhere on Defendant's website.  Instead, users have to scroll to roughly the middle the page and click on an FAQ question that does not state it relates to the caffeine content of the Bloks.  Further, no reasonable consumer would expect small print language buried in a random FAQ to contain language inconsistent with the prominent representations on the website that the Product contains 25mg or 50mg of caffeine per cube.

16.    Each consumer who has purchased the Products, either online or in a store, has been exposed to the same misleading advertising.  Further, Plaintiffs and reasonable consumers relied on Defendant's representation that each cube of the Product had 25mg or 50mg of caffeine.  Had Plaintiffs and consumers known that there was one-third the amount of caffeine in each cube of the Product as advertised, they would not have purchased the Bloks or would have paid less for them.

17.    Accordingly, Plaintiffs and other similarly situated consumers have been harmed in the amount of the price premium paid for the Bloks based on Defendant's misleading advertising.

18.    The representations regarding amounts of caffeine are material to consumers, who purchase the Products to aid in their physical performance and activities.  Plaintiffs and consumers purchased the Products believing the amount of caffeine on the front of the packaging was *per cube*.

19.    Plaintiffs are purchasers of the Product who assert claims on behalf of themselves and similarly situated purchasers of the Product for (i) breach of express warranty, (ii) violation of

the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*, (iii) fraud, (iv) violation of New York General  Business Law ("GBL") § 349, (v) violation of GBL § 350, (vi) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, (vii) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (viii) and violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

## PARTIES

20.     Plaintiff Jose Uribe is a resident of San Bernardino County, California and has an intent to remain there, and is therefore a domiciliary of California.  In April 2022, Plaintiff Uribe purchased the Black Cherry, Tropical Punch, and Orange flavors of the Bloks from Wal-Mart stores in Ontario, California, and City Of Industry, California.  Prior to his purchase, Plaintiff Uribe reviewed the Product's labeling and packaging and saw that the Bloks were labeled with "+[25 or 50] milligrams CAFFEINE."   Plaintiff Uribe saw these representations prior to, and at the time of purchase, and understood them as representations that the Bloks contained 25 or 50 milligrams of caffeine per cube.   Plaintiff Uribe relied on these representations in purchasing the Bloks, and the caffeine content of the Bloks was material to Plaintiff Uribe.  Accordingly, these representations and warranties were part of the basis of the bargain in that, had Plaintiff Uribe known that the Bloks contained less than 25 milligrams or 50 milligrams of caffeine per cube, he would not have purchased the Bloks or would have paid significantly less for them.  Plaintiff Uribe did not see, nor did he have any reason to see, any purported disclaimers stating that the caffeine content per cube was not 25 or 50 milligrams.

21.     Plaintiff Patrick Dunn is resident of Erie County, New York and has an intent to remain there, and is therefore a domiciliary of New York.   In June 2021, Plaintiff Dunn purchased the Black Cherry, Tropical Punch, and Orange flavors of the Bloks from Defendant's website.  Prior to his purchase, Plaintiff Dunn reviewed the representations on the website and saw that the Bloks were represented to have "+[25 or 50] milligrams CAFFEINE."  Plaintiff Dunn saw these representations prior to, and at the time of purchase, and understood them as representations that the Bloks contained 25 or 50 milligrams of caffeine per cube.   Plaintiff Dunn relied on these

representations in purchasing the Bloks, and the caffeine content of the Bloks was material to Plaintiff Dunn.  Accordingly, these representations and warranties were part of the basis of the bargain in that, had Plaintiff Dunn known that the Bloks contained less than 25 milligrams or 50 milligrams of caffeine per cube, he would not have purchased the Bloks or would have paid significantly less for them.  Plaintiff Dunn did not see, nor did he have any reason to see, any purported disclaimers stating that the caffeine content per cube was not 25 or 50 milligrams.

22.     Plaintiff Judith Vergien is resident of Erie County, New York and has an intent to remain there, and is therefore a domiciliary of New York.  In May 2022, Plaintiff Vergien purchased the Black Cherry flavor of the Bloks from Amazon.  Prior to her purchase, Plaintiff Vergien reviewed the representations on Amazon—which were materially identical to those on the packaging and website—and saw that the Bloks were represented to have "+50 milligrams CAFFEINE."  Plaintiff Vergien saw these representations prior to, and at the time of purchase, and understood them as representations that the Bloks contained 50 milligrams of caffeine per cube.  Plaintiff Vergien relied on these representations in purchasing the Bloks, and the caffeine content of the Bloks was material to Plaintiff Vergien.  Accordingly, these representations and warranties were part of the basis of the bargain in that, had Plaintiff Vergien known that the Bloks contained less than 50 milligrams of caffeine per cube, she would not have purchased the Bloks or would have paid significantly less for them.  Plaintiff Vergien did not see, nor did she have any reason to see, any purported disclaimers stating that the caffeine content per cube was not 50 milligrams.

23.     Defendant Clif Bar & Company is a California corporation with its principal place of business at 1451 66th Street, Emeryville, California 94608.  Defendant manufactures, markets, sells, and distributes the Bloks throughout the United States and the States of California and New York.  Defendant sold the Bloks with the aforementioned representations during the class period.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C § 1332(d)(2)(A) because this case is a class action where the aggregate claims of the proposed class

exceed $5,000,000.00, exclusive of interests and costs, there are over 100 members of the putative class, and at least one member of the proposed class is a citizen of a state different from Defendant.

25.     This Court has general personal jurisdiction over Defendant because Defendant is incorporated and maintains its principal place of business in California.

26.     Venue is proper in this Court Pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

## CLASS ALLEGATIONS

27.     **Nationwide Class Definition:** Plaintiffs seek to represent a class of similarly situated individuals defined as all persons in the United States who have purchased Clif Bloks Energy Chews in the Tropical Punch, Orange, or Black Cherry flavors during the applicable statute of limitations period (the "Nationwide Class").

28.     **New York Subclass Definition:** Plaintiffs Dunn and Vergien seek to represent a subclass consisting of all Class Members who purchased the Clif Bloks Energy Chews in the Tropical Punch, Orange, or Black Cherry flavors in the State of New York during the relevant statute of limitations period (the "New York Subclass").

29.     **California Subclass Definition:** Plaintiff Uribe seeks to represent a subclass consisting of all Class Members who purchased the Clif Bloks Energy Chews in the Tropical Punch, Orange, or Black Cherry flavors in the State of California during the relevant statute of limitations period (the "California Subclass").

30.     The Nationwide Class, New York Subclass, and California Subclass are collectively referred to as the "Classes."   Subject to additional information obtained through discovery and further investigation, the above-described Classes may be modified or narrowed as appropriate.

31.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are thousands of members in the Class and Subclass.  Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery.  Class members may be notified of the pendency of this action by

mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

32.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), 23(b)(3)):** A well-defined community of interest exists in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members of the Class include:

> (a)     whether the marketing labeling and advertisements for the Bloks were false and misleading;
>
> (b)     whether Defendant's conduct was unfair and/or deceptive; and
>
> (c)     whether Plaintiffs and the Classes sustained damages with respect to the claims asserted, and if so, the proper measure of their damages.

33.     **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of those of the Classes because Plaintiffs, like all members of the Classes, were exposed to Defendant's false and misleading marketing, purchased the Product in reliance on Defendant's false and misleading representations, and suffered a loss as a result of that purchase.

34.     **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation.  Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Moreover, Plaintiffs are able to fairly and adequately represent and protect the interests of the Classes.  Neither Plaintiffs nor their counsel have any interest adverse to, or in conflict with, the interests of the absent members of the Classes.  Plaintiffs have raised viable common-law and statutory claims of the type reasonably expected to be raised by members of the Classes and will vigorously pursue those claims.

35.     **Superiority (Fed. R. Civ. P. 23(b)(3)):** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.

Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Breach Of Express Warranty**
**(On Behalf Of The Classes)**

36.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

37.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

38.     This claim is brought under the laws of the States of California and New York.

39.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that each cube within every packet of the Bloks contained 25 or 50 milligrams of caffeine.

40.     In fact, the Product does not contain the amount of caffeine Defendant represents it to contain because each cube of the Product contains approximately one third of the represented amount of caffeine.

41.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Classes have been injured because they would not have purchased the Product, or would have paid substantially less for it, if they had known that each cube of the Product contained only one-third of the represented caffeine content.

42.     On July 26, 2022, prior to filing this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607.  Plaintiffs' counsel sent Defendant a letter advising that Defendant breached an

express warranty and demanded that Defendant cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' counsel's letter is attached hereto as **Exhibit 1**.

**COUNT II**
**Violation Of The Magnuson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.***
**(On Behalf Of The Classes)**

43.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

44.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classes against Defendant.

45.     The Product is a consumer product as defined in 15 U.S.C. § 2301(1).

46.     Plaintiffs and members of the Classes are consumers as defined in 15 U.S.C. § 2301(3).

47.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

48.     In connection with the marketing and sale of the Product, Defendant expressly warranted that each cube of the Product contained 25 or 50 milligrams of caffeine.  Each cube of the Product did not contain 25 or 50 milligrams of caffeine as alleged above.

49.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and members of the Classes pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiffs and members of the Class and Subclass.

50.     Plaintiffs and members of the Classes were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Product or would have paid less for it if they knew that each cube of the Product contained less than 25 or 50 milligrams of caffeine, and the caffeine content claims are therefore false and misleading.

**COUNT III**
**Fraud**
**(On Behalf Of The Classes)**

51.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

52.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against Defendant.

53.     This claim is brought under the laws of the States of California and New York.

54.     As alleged above, Defendant provided Plaintiffs and Class and Subclass members with false or misleading material information about the Product, including that the Product contained 25 or 50 milligrams of caffeine per cube.

55.     These misrepresentations were made with knowledge of their misleading nature, as evidenced by the fact that Defendant included inconspicuous and non-curative disclaimers on the Product's packaging and website that contradicted the front-facing representations concerning the caffeine content of the Product.

56.     The misrepresentations made by Defendant, upon which Plaintiffs and members of the Classes reasonably and justifiably relied, were intended to induce, and actually induced Plaintiffs and Class and Subclass members to purchase the Product.

57.     The fraudulent actions of Defendant caused damage to Plaintiffs and Class and Subclass members, who are entitled to damages and other legal and equitable relief as a result.

<u>COUNT IV</u>
<u>Violation Of GBL § 349</u>
**(On Behalf Of The New York Subclass)**

58.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

59.     Plaintiffs Dunn and Vergien bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

60.     This claim is brought under the laws of the State of New York.

61.     Plaintiffs Dunn and Vergien, as well as the New York Subclass members are "persons" within the meaning of GBL § 349(h).

62.     Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

63.     Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

64.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations regarding its Product. Specifically, Defendant's representations regarding caffeine on the Bloks' packaging caused reasonable consumers to understand that each cube within every six-cube packet of the Product contains 25 or 50 milligrams of caffeine, when in fact each cube only contains around one-third of that amount.

65.     The foregoing deceptive acts and practices were directed at consumers.

66.     The foregoing deceptive acts and practices were misleading in a material way because they fundamentally misrepresent the amount of caffeine contained in each cube of the Product.

67.     Defendant's conduct was likely to and did deceive reasonable consumers, including Plaintiffs Dunn and Vergien and New York Subclass Members, about the quantity of caffeine in each cube of the Bloks, as discussed throughout.

68.     Plaintiffs Dunn, Vergien, and members of the New York Subclass were injured as a result of Defendant's deceptive acts and practices because they would not have purchased the Product, or would have paid substantially less for it, if they had known that each cube of the Product contained only one-third of the represented caffeine content.

69.     On behalf of themselves and other members of the New York Subclass, Plaintiffs Dunn and Vergien seek to recover their actual damages or $50, whichever is greater, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 349. In addition, because Defendant acted willfully or knowingly, Plaintiffs Dunn, Vergien, and the New York Subclass members seek to recover three times their actual damages.

**COUNT V**
**Violation Of GBL § 350**
**(On Behalf Of The New York Subclass)**

70.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

71.     Plaintiffs Dunn and Vergien bring this claim individually and on behalf of the members of the proposed New York Subclass against Defendant.

72.     This claim is brought under the laws of the State of New York.

73.    GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

74.    GBL § 350-a(1) defines "false advertising" as

advertising, including labeling of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are custom or usual.

75.    Plaintiff Dunn and Vergien and New York Subclass Members are reasonable consumers who reasonably believed that Defendant's representations on the packaging and website meant that the Bloks contained 25 or 50 milligrams of caffeine per cube.  These representations were not true because each cube of the Product contained only one-third of the represented caffeine content.

76.    Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way and constitutes false advertising in violation of GBL § 350 by misrepresenting the fact that each cube of the Product contains 25 or 50 milligrams of caffeine when each cube actually contains one-third of that amount.

77.    As a result of Defendant's misrepresentations, Plaintiffs Dunn, Vergien, and members of the New York Subclass have suffered economic injury because they would not have purchased the Product, or would have paid substantially less for it, if they had known that each cube of the Product contained only one-third of the represented caffeine content.

78.    On behalf of themselves and other members of the New York Subclass, Plaintiffs Dunn and Vergien seek to recover their actual damages or $500, whichever is greater, as well as their reasonable attorneys' fees.

//

//

//

1

**COUNT VI**
**Violation Of California's Consumers Legal Remedies Act,**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf Of The California Subclass)**

79.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

80.     Plaintiff Uribe brings this claim individually and on behalf of the members of the California Subclass against Defendant.

81.     This claim is brought under the laws of the State of California.

82.     Plaintiff Uribe and members of the California Subclass are consumers within the meaning of Cal. Civ. Code § 1761(d).

83.     Cal. Civ. Code § 1770(a)(4) prohibits "[u]sing deceptive representations … in connection with goods or services."  Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

84.     Defendant violated Cal. Civ. Code §§ 1770(a)(4), (a)(7), and (a)(9) by intentionally making false and misleading statements through its packaging that the Product contained 25 or 50 milligrams of caffeine per cube.

85.     Defendant's misrepresentations and omissions deceive and have a tendency and ability to deceive the general public.

86.     Plaintiff Uribe and members of the California Subclass have suffered harm as a result of these violations of the CLRA because they have incurred charges and/or paid monies for the Product that they otherwise would not have incurred or paid but for Defendant's misrepresentations.

87.     Plaintiff Uribe and members of the California Subclass were injured by Defendant's CLRA violations.  As a result, Plaintiff Uribe and the California Subclass are entitled to actual damages in an amount to be proven at trial, reasonable attorneys' fees and costs, declaratory relief, and punitive damages.

88.     Plaintiff Uribe and members of the California Subclass have no adequate remedy at law for this claim.  Plaintiff Uribe pleads his claim for equitable in the alternative, which inherently would necessitate a finding of no adequate remedy at law.  Alternatively, legal remedies available to Plaintiff Uribe are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); see also *United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity.  To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

89.     Furthermore:

    (a)    To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff Uribe fails to sufficiently adduce evidence to support an award of damages.

    (b)    Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff Uribe seeks such relief here.

    (c)    Legal claims for damages are not equally certain as restitution because claims under the CLRA entail few elements.

    (d)    A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." RESTATEMENT (THIRD) OF RESTITUTION § 4(2).

90.     On July 26, 2022, prior to the filing of this Complaint, Plaintiff Uribe's counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter also provided notice of Defendant's other violations laid out in this Complaint, including breach of express warranty.  The letter was sent via certified mail, return

receipt requested, and advised Defendant that it was in violation of the CLRA and demanded that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiff Uribe and all other similarly situated purchasers.  Defendant failed to correct its business practices or provide the requested relief within thirty (30) days.  A true and correct copy of the letter is attached hereto as **Exhibit 1**.

**COUNT VII**
**Violation Of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf Of The California Subclass)**

91.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

92.     Plaintiff Uribe brings this claim individually and on behalf of the members of the California Subclass against Defendant.

93.     This claim is brought under the laws of the State of California.

94.     By committing the acts and practices alleged herein, Defendant has violated the UCL as to Plaintiff Uribe and the California Subclass by engaging in unlawful, fraudulent, and unfair conduct.

95.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of the several state consumer protection statute and common law claims.

96.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

97.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Product is likely to deceive reasonable consumers.

98.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

99.     Plaintiff Uribe and the other California Subclass members suffered a substantial injury by virtue of buying the Product that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the correct

amount of caffeine within each cube of the Product, or by virtue of paying an excessive premium price for the unlawfully, fraudulently, and misleadingly marketed, advertised, packaged, and labeled Product.

100.    There is no benefit to consumers or competition from deceptively marketing material facts about caffeine content per cube of the Product.

101.    Plaintiff Uribe and the other California Subclass members had no way of reasonably knowing that the Product they purchased was not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

102.    The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff Uribe and the other California Subclass members.

103.    Through its unlawful, misleading, and fraudulent conduct, Defendant acquired money directly and as passed on by retailers (*e.g.*, Wal-Mart and Amazon).

104.    Plaintiff Uribe and members of the California Subclass have no adequate remedy at law for this claim.  Plaintiff Uribe pleads his claim for equitable in the alternative, which inherently would necessitate a finding of no adequate remedy at law.  Alternatively, legal remedies available to Plaintiff Uribe are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); see also *United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

105.   Furthermore:

(a)   To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff Uribe fails to sufficiently adduce evidence to support an award of damages.

(b)   Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff Uribe seeks such relief here.

(c)   Legal claims for damages are not equally certain as restitution because claims under the UCL entail few elements.

(d)   A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." RESTATEMENT (THIRD) OF RESTITUTION § 4(2).

106.   Plaintiff Uribe and California Subclass members accordingly seek appropriate relief, including (i) restitution under the UCL, and (ii) such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and fraudulent practices. Plaintiff Uribe also respectfully seeks reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure § 1021.5.

**COUNT VIII**
**Violation Of California's False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf Of The California Subclass)**

107.   Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

108.   Plaintiff Uribe brings this claim individually and on behalf of the members of the California Subclass against Defendant.

109.   This claim is brought under the laws of the State of California.

110.   California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning …

personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

111.    Defendant committed acts of false advertising, as defined by Cal. Bus. & Prof. Code § 17500, by fraudulently representing that the Bloks contained 25 or 50 milligrams of caffeine per cube.

112.    Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Bloks were misleading and inaccurate.

113.    Defendant's actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

114.    Plaintiff Uribe and the California Subclass lost money as a result of Defendant's FAL violations because (i) they would not have purchased the Bloks on the same terms if Defendant had made known the actual amount of caffeine per cube of the Product; (ii) they paid a price premium for the Product due to Defendant's representations that each cube contained 25 or 50 milligrams of caffeine; and (iii) the Product did not have the characteristics that Defendant promised it did.

115.    Plaintiff Uribe and members of the California Subclass have no adequate remedy at law for this claim.  Plaintiff Uribe pleads his claim for equitable in the alternative, which inherently would necessitate a finding of no adequate remedy at law.  Alternatively, legal remedies available to Plaintiff Uribe are inadequate because they are not "equally prompt and certain and in other ways efficient" as equitable relief.  *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937); see also *United States v. Bluitt*, 815 F. Supp. 1314, 1317 (N.D. Cal. Oct. 6, 1992) ("The mere existence' of a possible legal remedy is not sufficient to warrant denial of equitable relief."); *Quist v. Empire Water Co.*, 2014 Cal. 646, 643 (1928) ("The mere fact that there may be a remedy at law does not oust the jurisdiction of a court of equity. To have this effect, the remedy must also be speedy, adequate, and efficacious to the end in view … It must reach the whole mischief and secure the whole right of the party in a perfect manner at the present time and not in the future.").

116.    Furthermore:

(a)    To the extent damages are available here, damages are not equally certain as restitution because the standard that governs ordering restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiff Uribe fails to sufficiently adduce evidence to support an award of damages.

(b)    Damages and restitution are not necessarily the same amount. Unlike damages, restitution is not limited to the amount of money defendant wrongfully acquired plus the legal rate of interest. Equitable relief, including restitution, entitles the plaintiff to recover all profits from the wrongdoing, even where the original funds taken have grown far greater than the legal rate of interest would recognize. Plaintiff Uribe seeks such relief here.

(c)    Legal claims for damages are not equally certain as restitution because claims under the FAL entail few elements.

(d)    A claimant otherwise entitled to a remedy for unjust enrichment, including a remedy originating in equity, need not demonstrate the inadequacy of available remedies at law." RESTATEMENT (THIRD) OF RESTITUTION § 4(2).

117.    Accordingly, Plaintiff Uribe and the California Subclass seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices, declaratory relief, reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5, and other appropriate equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

(a)    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives of the Classes, and naming Plaintiffs' attorneys as Class Counsel to represent the Classes;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)    For prejudgment interest in all amounts awarded;

(f)    For an order of restitution and all other forms of equitable monetary relief;

1

      (g)     For an order awarding Plaintiffs and the Classes their reasonable attorney's fees and expenses and cost of suit.

2

## JURY TRIAL DEMANDED

3

      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any

4

and all issues in this action so triable as of right.

5

6

7

Dated:  August 26, 2022                  Respectfully submitted,

8

                                      **BURSOR & FISHER, P.A**.

9

                                By: *__/s/ Brittany S. Scott__*

10

                                   Brittany S. Scott
                                L. Timothy Fisher (State Bar No.191626)

11

                                 Brittany S. Scott (State Bar No. 327132)
                                 1990 North California Boulevard, Suite 940

12

                                 Walnut Creek, CA 94596
                                 Telephone: (925) 300-4455

13

                                 Facsimile:  (925) 407-2700
                                 E-Mail: ltfisher@bursor.com

14

                                               bscott@bursor.com

15

                                 **BURSOR & FISHER, P.A.**
                               Max S. Roberts (*Pro Hac Vice Pending*)

16

                               888 Seventh Avenue
                               New York, NY 10019

17

                               Telephone: (646) 837-7150
                               Facsimile:  (212) 989-9163

18

                               E-Mail: mroberts@bursor.com

19

                               *Attorneys for Plaintiffs*

20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Brittany S. Scott, declare as follows:

      1.    I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am an associate at Bursor & Fisher, P.A., counsel of record for Plaintiffs in this action. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

      2.    The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of California.

      I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 26th day of August, 2022.

*/s/ Brittany S. Scott*
Brittany S. Scott

**EXHIBIT 1**

# BURSOR & FISHER
## P.A.

**1990 N. CALIFORNIA BLVD.**
**SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**BRITTANY S. SCOTT**
Tel: **925.300.4455**
Fax: **925.407.2700**
**bscott@bursor.com**

July 26, 2022

*Via Certified Mail – Return Receipt Requested*

Clif Bar & Company
1451 66th Street
Emeryville, CA 94608

Re:   *Notice and Demand Letter Pursuant to U.C.C. §§ 2-313, 2-314, 2-607;*
*California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, et seq.; New*
*York's General Business Law §§ 349-50; and all other relevant state and local laws*

To Whom It May Concern:

        This letter serves as a preliminary notice and demand for corrective action by Clif Bar & Company ("Clif" or "You") pursuant to UCC § 2-607(3)(a) for breaches of express warranty as well as violations of state consumer protection laws related to our clients, Jose Uribe, Judith Vergien, and Patrick Dunn (collectively, the "Clients"), and a California and New York class of all similarly situated purchasers (collectively, the "Classes") of Clif products regarding the packaging, marketing, and sale of Your Clif BLOKS Energy Chews (the "Bloks") in flavors containing 25-50 milligrams of caffeine. This letter also serves as notice of violation of the California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750*, et seq*., including subsections 1770(a)(4), (7), and (9); New York General Business Law §§ 349-50 ("GBL"),  and all other applicable federal and state laws.  Should we not receive a response to our offer of resolution set forth below, this letter provides statutory notice of our intent to file a class action lawsuit.

        Our Clients purchased Bloks in all three flavors that contain caffeine: Tropical Punch, Orange, and Black Cherry.[1]  In June 2021, Mr. Dunn, who resides in West Seneca, New York, purchased all three flavors of the Bloks from Your website.  In April 2022, Mr. Uribe purchased all three flavors of the Bloks from one of his two local Wal-Mart stores: 1333 North Mountain Avenue, Ontario, CA 91762 or 17150 Gale Avenue, City of Industry, CA 91745.  In May 2022, Ms. Vergien, who resides in West Falls, New York, purchased the Black Cherry flavor of the Bloks from Amazon.

        As You know, each packet of Bloks contains six cubes of product.  Each of the Clients— indeed, consumers at large—purchased the Bloks based on the belief that they contained 25-50

---

[1] "[T]hree flavors of CLIF BLOKS contain caffeine."  https://shop.clifbar.com/products/clif-bloks-energy-chews-black-cherry.

BURSOR&FISHER
P.A.

milligrams of caffeine per block, as You prominently represent on the packaging of the Bloks, and thus paid a price premium based on those representations and warranties.

However, contrary to Your representations, each cube within a Bloks packet does not contain 25-50 milligrams of caffeine.  Each cube only contains one-third of either 25 or 50 milligrams of caffeine.[2]  Further, Your attempts to disclaim this unambiguous claim are not curative, as the disclaimer is hidden beneath the flap on the back of the packaging.  Had You clearly disclosed that the Bloks do not contain 25-50 milligrams of caffeine per cube, the Clients and members of the Classes would not have purchased the Bloks or would have paid less for the Bloks than they did.

Your conduct thus constitutes a breach of express warranty (*see* U.C.C. § 2-313), common law fraud, and violates numerous consumer protection statutes, including but not limited to the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and New York General Business Law §§ 349-50.  As a result of Your violation of the above-referenced statutes, the Clients sustained injury.

As to California in particular, you have violated the California Consumers Legal Remedies Act by (i) deceptively representing that the Bloks contained more caffeine per package than they actually had, in violation of Cal. Civ. Code § 1770(4); (ii) representing that the Bloks were of a certain standard or quality when they were not, in violation of Cal. Civ. Code § 1770(7); and (iii) advertising the Bloks with an intent not to sell them as advertised, in violation of Cal. Civ. Code § 1770(9).  As a result of Your violation of the California Consumers Legal Remedies Act, Mr. Uribe sustained injury.

On behalf of the Clients and the Classes, we hereby demand that You immediately (1) cease and desist from continuing to represent the Bloks as each square containing 25-50 milligrams of caffeine; and (2) make full restitution to all purchasers who purchased Bloks You wrongfully represented as containing 25-50 milligrams per cube.

We also demand that You preserve all documents and other evidence which refers or relates to any of the above-described practices including, but not limited to, the following:

1.    All documents concerning the manufacturing, labeling, and packaging processes for Clif BLOKS Energy Chews in the Black Cherry, Tropical Punch, and Orange flavors;

---

[2] Only the Black Cherry flavor has 50 milligrams of caffeine per serving.  The Tropical Punch and Orange flavors contain 25 milligrams of caffeine per serving.  *See* https://shop.clifbar.com/products/clif-bloks-energy-chews-black-cherry.

2.      All documents concerning the pricing, advertising, marketing, and/or sale of the Bloks with caffeine by Clif Bar & Company;

3.      All documents concerning any research done by Clif Bar & Company or any third party on behalf of Clif Bar & Company regarding the representation containing 25-50 milligrams of caffeine, including but not limited to the value of the representation and the effect of the representation on sales and consumer perception;

4.      All documents concerning how Clif Bar & Company determined its packaging design for the Orange, Tropical Punch, and Black Cherry flavors of Clif BLOKS; and

5.      All documents concerning the total sales of the Bloks in the above-mentioned three flavors, as well as total revenue and profits derived from sales of those Bloks.

If You contend that any statement in this letter is inaccurate in any respect, please provide us with Your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if You wish to discuss an appropriate way to remedy this matter.  If I do not hear from You promptly, I will take that as an indication that You are not interested in doing so.

Very truly yours,

Brittany S. Scott